UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CESAR GALINDO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>    Defendant. | Case No. 17-CV-00021-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 50 |

Plaintiffs Cesar Galindo ("Galindo") and Maria Rivera ("Rivera") (collectively, "Plaintiffs"), bring suit against Defendant Ocwen Loan Servicing, LLC ("Defendant") for negligence and violation of California's Unfair Competition Law ("UCL"). *See* ECF No. 31 (First Amended Complaint, or "FAC"). Before the Court is Defendant's motion to dismiss. ECF No. 50 ("Def. Mot."). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for decision without oral argument and accordingly VACATES the motion hearing set for October 5, 2017, at 1:30 p.m. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS with prejudice in part and DENIES in part Defendant's motion to dismiss.

**I.    BACKGROUND**

### A. Factual Background

On September 26, 2006, Galindo borrowed $436,000 from Bank of America, N.A. ("BOA"), secured by a deed of trust encumbering property located at 3146 Barletta Lane in San Jose, CA (hereinafter, "the Property"). FAC, Ex. 1. ("Deed of Trust"). Rivera, the wife of Galindo, is not a borrower on the loan, but "is a joint owner of the Property." FAC ¶ 15. Plaintiffs defaulted on the loan on March 1, 2009. ECF No. 51-1.[1] A Notice of Default and Election to Sell Under Deed of Trust was recorded on March 2, 2011. *Id.*

On September 1, 2012, Defendant acquired from BOA the servicing rights for Plaintiffs' loan. FAC, Ex. 2. Plaintiffs allege that they "began applying for a [Home Affordable Modification Program ("HAMP")] loan modification," although Plaintiffs do not specify in their Complaint a date that Plaintiffs began applying for a loan modification. FAC ¶ 17. In 2015, "after years of loan modification application negotiations that resulted in bad faith denials, Plaintiffs filed an administrative complaint." FAC ¶ 21. On May 29, 2015, Plaintiffs received a letter from Defendant in response to Plaintiffs' administrative complaint. *Id.* Ex. 2.

Defendant's May 29, 2015 letter to Plaintiffs, which Plaintiffs attach to the FAC, informed Plaintiffs that "[a] review of [Defendant]'s records indicate[d] [Plaintiffs] were approved [by Defendant] for a Trial Period Plan (TPP) Offer," and that an offer was sent to Plaintiffs' attention on September 14, 2012. *Id.* "The [September 14, 2012 TPP offer] letter indicated if [Plaintiffs] completed the TPP by making all payments as stipulated in the offer," Plaintiffs would receive a loan modification. *Id.* Under the terms of the TPP offer, Plaintiffs "were required to make three (3) TPP payments" in order to "be eligible for the modification." *Id.* Defendant's May 29, 2015

---

[1] Defendant requests judicial notice of the Notice of Default and Election to Sell Under Deed of Trust. *See* ECF No. 50. On a motion to dismiss, the Court is limited to "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1302, 1212 (9th Cir. 2012). The Court may take judicial notice of facts not subject to reasonable dispute that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[M]atters of public record" are the appropriate subjects of judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Accordingly, the Court GRANTS Defendant's unopposed request for judicial notice of the Notice of Default and Election to Sell Under Deed of Trust because it is a "matter of public record" and not subject to reasonable dispute.

United States District Court
Northern District of California

1 letter to Plaintiffs informed Plaintiffs that Defendant denied Plaintiffs a loan modification "on December 13, 2012" because Plaintiffs "failed to make the TPP" payments. *Id.* However, according to Plaintiffs, "Plaintiffs never received notice" of the offer. FAC ¶ 24.

Defendant's May 29, 2015 letter to Plaintiffs also informed Plaintiffs that Defendant's "[r]ecords indicate[d] that [Plaintiffs'] initial request for a [HAMP loan modification] was received on May 26, 2014; however, [Plaintiffs] were denied for the HAMP program and [Defendant] was unable to offer [Plaintiffs] a HAMP because the owner of the account does not participate in the government's HAMP program." *Id.* Defendant's May 29, 2015 letter further informed Plaintiffs that Defendant had continued to review Plaintiffs' account for alternatives to HAMP, but "additional documents were required" from Plaintiffs, and Plaintiffs never submitted the required documents. *Id.*

Defendant's May 29, 2015 letter to Plaintiffs further stated that Defendant approved Plaintiffs "for a Proprietary Modification" on December 14, 2014. *Id.* Defendant sent Plaintiffs "[a] Proposed Modification Agreement" on December 15, 2014. *Id.* The Proposed Modification Agreement "indicated that in order to accept the terms [Plaintiffs] were required to make a down payment in the amount of $4,245.88 on or before January 1, 2015 and two (2) TPP payments each in the amount of $4,245.88 on February 1, 2015 and March 1, 2015." *Id.* However, because Plaintiffs "failed to make the initial TPP by the required due date[,] the modification was denied on February 9, 2015." *Id.* Defendant sent a denial letter to Plaintiffs on February 11, 2015. *Id.*

Defendant's May 29, 2015 letter to Plaintiffs also told Plaintiffs that Defendant received "[a] second HAMP request" from Plaintiffs on April 8, 2015." *Id.* However, Defendant again denied Plaintiffs a HAMP modification "because the owner of the account either does not allow principal reduction or does not participate in the HAMP" program. *Id.*

In or about September 2015, BSI Financial Services, Inc. ("BSI") acquired from Defendant the servicing rights to Plaintiffs' loan. FAC ¶ 26. Thereafter, Plaintiffs sent a loan modification request to BSI. *Id.* ¶ 27. On September 28, 2015, BSI filed a Notice of Trustee's Sale (hereinafter, "Notice of Sale") with the Santa Clara County Recorder's Office. FAC ¶ 32 & Ex. 3.

3

1 Plaintiff alleges that when BSI recorded the Notice of Sale, "[n]o decision had been made on
2 Plaintiffs' loan modification application." *Id.*

### B. Procedural History

On January 4, 2017, Plaintiffs filed suit against BSI in this Court. ECF No. 1. Plaintiffs alleged four causes of action against BSI: (1) negligence; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of California Civil Code Section 2923.6(c); and (4) violation of the UCL.

On January 26, 2017, BSI moved to dismiss all four causes of action. *See* ECF No. 11. On February 2, 2017, Plaintiffs opposed BSI's motion. ECF No. 14. On February 9, 2017, BSI filed a reply. ECF No. 15.

On March 17, 2017, the Court granted BSI's motion to dismiss. ECF No. 23. As relevant here, the Court held that Plaintiffs failed to state a claim for negligence against BSI because Plaintiffs based their negligence claim, in part, on conduct that was committed by *Defendant*, not BSI. *Id.* at 10–11. For similar reasons, the Court held that Plaintiffs could not state a claim for violation of the implied covenant of good faith and fair dealing or the UCL against BSI for Defendant's conduct. The Court held that Plaintiffs also failed to state a claim that BSI violated California Civil Code § 2923.6(c). The Court granted Plaintiffs leave to amend the complaint within thirty days, but stated that Plaintiffs "may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15." *Id.* at 17.

On April 13, 2017, Plaintiffs filed a motion for leave to file a FAC and requested leave of Court to add Defendant as a defendant. ECF No. 26. BSI did not oppose Plaintiffs' motion. ECF No. 28. On May 26, 2017, the Court granted Plaintiffs' motion for leave to file a FAC. ECF No. 30.

On May 29, 2017, Plaintiffs filed a FAC, which added Defendant as a defendant and alleged that BSI violated California Civil Code § 2923.6(c) and that both Defendant and BSI were negligent and violated the UCL. ECF No. 31.

On July 5, 2017, Plaintiffs filed a motion for a temporary restraining order ("TRO"), which asked the Court to enjoin Defendant and BSI from selling Plaintiffs' home at a trustee's sale that was scheduled to occur on July 19, 2017. ECF No. 46. That same day, the Court ordered Defendant and BSI to file a response to Plaintiffs' TRO motion on or before July 11, 2017.

On July 10, 2017, Defendant and BSI filed oppositions to Plaintiffs' motion for a TRO. ECF Nos. 52 & 53. That same day, the Court issued an order for Plaintiffs to reply to Defendants' oppositions to Plaintiffs' motion for TRO. ECF No. 54. On July 11, 2017, Plaintiffs filed a reply. ECF No. 55. On July 14, 2017, the Court denied Plaintiffs' TRO motion. ECF No. 56. The Court found that Plaintiffs failed to demonstrate a likelihood of success on the merits of their claim because at that point in time, Defendant and BSI were not the servicers of Plaintiffs' loan. Thus, Defendant and BSI "d[id] not have the authority to stop the foreclosure sale scheduled for July 19, 2017." *Id.* at 7. Beyond that, the Court found that Plaintiffs "failed to establish a likelihood of success on the merits of their claims against [Defendant] for negligence and violation of the UCL," which were "the only claims that Plaintiffs brief[ed] in their TRO motion and discuss[ed] in their declaration in support of their TRO motion." *Id.* at 10.

While Plaintiffs' TRO motion was pending, both BSI and Defendant moved to dismiss Plaintiffs' FAC on July 10, 2017. ECF No. 48; Def. Mot. On July 24, 2017, ten days after the Court denied Plaintiffs' TRO motion, Plaintiffs voluntarily dismissed BSI without prejudice. ECF No. 57. That same day, Plaintiffs opposed Defendant's motion to dismiss. ECF No. 58 ("Pl. Opp."). On July 31, 2017, Defendant filed a Reply. ECF No. 62 ("Reply").

**II.   LEGAL STANDARD**

   **A. Motion to Dismiss Under Rule 12(b)(6)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

5
Case No. 17-CV-00021-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing

6

Case No. 17-CV-00021-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

Plaintiffs bring causes of action against Defendant for (1) negligence; and (2) violation of the UCL. The Court addresses each cause of action in turn.

#### A. Negligence

The elements of negligence in California are: (1) defendant had a legal duty to use due care towards the plaintiff; (2) the defendant breached that duty; and (3) the breach was the proximate or legal cause of (4) the resulting injury. *Ladd v. Cty. of San Mateo*, 911 P.2d 496, 498 (Cal. 1996). The California Supreme Court has identified six factors, known as the *Biakanja* factors, to determine whether there is a duty of care. The *Biakanja* factors are: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. *See Biakanja v. Irving*, 49 Cal. 2d 657, 650 (1958).

"As a general rule in California, a 'financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Alvarez v. BAC Home Loans Serv., L.P.*, 228 Cal. App. 4th 941, 944 (Cal. Ct. App. 2014) (citing *Lueras v. BAC Home Loans Serv., L.P.*, 221 Cal. App. 4th 49, 62 (Cal. Ct. App. 2013)). However, in applying this general rule, California courts have differed in their application of the *Biakanja* factors in the home loan modification context.

In *Lueras*, 221 Cal. App. 4th at 67, the California Court of Appeal for the Fourth District concluded that "a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." The *Lueras* court reasoned that the *Biankanja* factors did not support finding a duty of care because the borrower's

harm—being unable to make payments on their loan—was a result of the borrower's default on their home loan, and was not "closely connected to the lender's conduct" as long as the lender did not place the borrower in a position that created the need for the loan modification in the first place. *Id.* Thus, the *Lueras* court concluded that the lender had no common law duty under California law "to offer or approve a loan modification." *Id.*

However, in *Alvarez*, the California Court of Appeal for the First District concluded that a lender did have a common law duty "to exercise reasonable care in the review of [plaintiffs'] loan modification applications once [the lender] had agreed to consider" the plaintiffs' loan modification applications. *Alvarez*, 228 Cal. App. 4th at 944. The plaintiffs in *Alvarez* alleged that the lender improperly handled their home loan modifications and that the lender's delay in processing the plaintiffs' loan modification "deprived [Plaintiffs] of the opportunity to seek relief elsewhere." *Id.* The *Alvarez* court reasoned that "[t]he transaction was intended to affect the plaintiffs and it was entirely foreseeable that failing to timely and carefully process the loan modification applications could result in significant harm to" plaintiffs. *Id.* at 951. The court in *Alvarez* thus held that the *Biankanja* factors supported finding a duty of care. *Id.* at 952.

Defendant urges the Court to follow *Lueras* and find that Defendant owed no duty of care to Plaintiffs. On the other hand, Plaintiffs rely on *Alvarez* to contend that (1) Defendant owed a duty of care to Plaintiffs; and (2) Defendant breached that duty by failing to provide Plaintiffs with notice of a loan modification offer in September 2012 and by incorrectly informing the Plaintiffs that Plaintiffs's were not eligible for a HAMP loan modification. FAC ¶¶ 65, 67.

There has been disagreement amongst federal courts as to whether *Lueras* or *Alvarez* is more persuasive. *Compare Romo v. Wells Fargo Bank, N.A.*, 2016 WL 324286, at *9 (N.D. Cal. Jan. 27, 2016) (stating that "most federal district courts have followed *Alvarez*"), *with Marques v. Wells Fargo Bank, N.A.*, 2016 WL 5942329, at *7 (N.D. Cal. Oct. 13, 2016) ("A growing number of courts that have addressed this issue since *Lueras* and *Alvarez* have adopted the holding in *Lueras* in finding that a mortgage servicer does not owe borrowers a duty of care in processing a residential loan modification").

8
Case No. 17-CV-00021-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

The Court has not found and the parties do not cite a single Ninth Circuit decision, published or unpublished, that adopts the holding in *Alvarez*. However, at least four Ninth Circuit unpublished opinions adopted the holding in *Lueras* and found that financial institutions owed no duty of care to borrowers in the loan modification process. *See Anderson v. Deutsche Bank Nat'l Trust Co. Americas*, 649 F. App'x 550, 552 (9th Cir. 2016) ("[W]hen 'the lender did not place the borrower in a position creating a need for a loan modification no moral blame . . . attaches to the lender's conduct.'" (quoting *Lueras*, 221 Cal. App. 4th at 67)); *Badame v. J.P. Morgan Chase Bank, N.A.*, 641 F. App'x 707, 709–10 (9th Cir. 2016) ("Chase did not owe Plaintiffs a duty of care when considering their loan modification application because 'a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." (quoting *Lueras*, 221 Cal. App. 4th at 67); *Deschaine v. IndyMac Morg. Servs.*, 617 F. App'x 690, 692 (9th Cir. 2015) (citing *Lueras* for the proposition that "IndyMac had no duty to offer Deschaine a loan modification based on an income determined by Deschaine or to handle Deschaine's loan 'in such a way to prevent foreclosure and forfeiture of his property'"); *Benson v. Ocwen Loan Servicing, LLC*, 562 F. App'x 567, 569–70 (9th Cir. 2014) (citing *Lueras* for the proposition that a loan servicer did not owe a borrower "a common law duty of care"); *see also Newman v. Bank of N.Y. Mellon*, 2017 WL 1831940, at *11 (E.D. Cal. May 8, 2017) ("[T]he Ninth Circuit has repeatedly relied on *Lueras* to find there is no duty of care in the loan modification process.").

Because the weight of Ninth Circuit authority, albeit unpublished, follows *Lueras*, this Court does the same. In *Lueras*, the California Court of Appeal concluded that a lender owes no duty of care to a borrower in the loan modification process because "a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." 221 Cal. App. 4th at 67. Further, *Lueras* observed that the *Biakanja* factors do not support finding that a lender owed a duty of care to a borrower in the loan modification process. *Id.* Thus, under *Lueras*, Plaintiffs cannot establish that Defendant owed Plaintiffs a duty of care in the loan modification process. Further, as *Lueras* makes clear,

9

Case No. 17-CV-00021-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

affording Plaintiffs leave to amend would be futile. As a result, the Court GRANTS with prejudice Defendant's motion to dismiss Plaintiffs' negligence claim. *See Leadsinger*, 512 F.3d at 532 (stating that leave to amend may be denied if allowing amendment would be futile).

**B. UCL**

California's UCL prohibits business practices that are "unfair, unlawful or fraudulent." Cal. Bus. & Prof. Code § 17200. Plaintiffs bring their UCL claim under the "unlawful" and "unfair" prongs of the UCL.[2] *See* FAC ¶¶ 77 (alleging Defendant's "unlawful and unfair business practices"). Specifically, Plaintiffs argue that Defendant acted unlawfully and unfairly by (1) "failing to provide Plaintiffs with their approved HAMP loan modification offer in September of 2012"; (2) incorrectly telling Plaintiffs that Plaintiffs' 2014 HAMP loan modification application was denied because Plaintiffs were no longer HAMP-eligible; and (3) "failing to properly process Plaintiffs' loan modification application." FAC ¶ 76.

Defendant moves to dismiss Plaintiffs' entire UCL claim on the ground that "[t]he viability of a UCL claim stands or falls with the antecedent substantive causes of action." Def. Mot. at 8. Thus, according to Defendant, Plaintiffs' UCL claim fails because Plaintiffs do not sufficiently allege any "antecedent substantive causes of action." *Id.*

Defendant is half correct. To the extent that Plaintiffs bring their UCL claim under the "unlawful" prong, Plaintiffs have failed to sufficiently allege a UCL violation because Plaintiffs have not successfully alleged that Defendant violated any other law. "Under the UCL's 'unlawful' prong, violations of other laws are 'borrowed' and made independently actionable under the UCL." *Herron v. Best Buy Co., Inc.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. Feb. 14,

---

[2] In their opposition to Defendants' motion to dismiss, Plaintiffs argue for the first time that "Plaintiffs have also sufficiently alleged the fraudulent prong of the UCL." Pl. Opp. at 12. The Court need not address this new UCL theory because Plaintiffs' FAC does not appear to bring a claim under the "fraudulent" prong of the UCL. Specifically, while the FAC identifies particular acts as "unlawful" and "unfair," the FAC mentions the word "fraudulent" only in passing and does not identify any specific acts as "fraudulent." *See* FAC ¶¶ 70–81. Thus, Plaintiffs' FAC fails to "provide[] fair notice of the nature of" Plaintiffs' new theory under the "fraudulent" prong of the UCL and "the facts which underlie" that theory. *Grid Sys. v. Tex. Instruments, Inc.*, 771 F. Supp. 1033, 1037 (N.D. Cal. 1991).

10
Case No. 17-CV-00021-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

2013). Other than Plaintiffs' UCL claim against Defendant, Plaintiffs' FAC asserts only a negligence claim against Defendant. As discussed above, Plaintiffs cannot state a negligence claim against Defendant because Defendant owed no duty of care to Plaintiffs in the loan modification process. Accordingly, because Plaintiffs' claim under the "unlawful" prong of the UCL necessarily relies on Plaintiffs' negligence claim, Plaintiffs have failed to state a claim under the "unlawful" prong of the UCL. *Singh v. Wells Fargo Bank, N.A.*, 2009 WL 2365881, at *5 (N.D. Cal. July 30, 2009) (dismissing UCL claim because plaintiff failed to show that the defendant committed any underlying violation of law). Further, because the Court grants with prejudice Defendant's motion to dismiss Plaintiffs' negligence claim, it would be futile to allow Plaintiffs to amend their UCL claim under the "unlawful" prong. As a result, the Court GRANTS with prejudice Defendant's motion to dismiss Plaintiffs' UCL claim to the extent the claim relies on the "unlawful" prong of the UCL. *See Leadsinger*, 512 F.3d at 532 (stating that leave to amend may be denied if allowing amendment would be futile).

However, to the extent that Plaintiffs bring their UCL claim under the "unfair" prong, Defendant's argument is unavailing. Under California law, it is well established that "a practice may be deemed unfair [under the UCL] even if not specifically proscribed by some other law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). In other words, "[w]hile a UCL claim against an 'unlawful' practice may require a statutory or regulatory violation, an unfair practice does not." *Zuniga v. Bank of America N.A.*, 2014 WL 7156403, at *7 (C.D. Cal. 2014); *see id.* ("[A] plaintiff may state a claim [under the UCL] for an unfair practice without relying on that practice being unlawful."). Thus, the Court DENIES Defendant's motion to dismiss Plaintiffs' UCL claim to the extent the claim relies on the "unfair" prong of the UCL.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. In particular:

1. The Court GRANTS with prejudice Defendant's motion to dismiss Plaintiffs' negligence claim.

11
Case No. 17-CV-00021-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

2. The Court GRANTS with prejudice Defendant's motion to dismiss Plaintiffs' UCL claim to the extent Plaintiffs' UCL claim relies on the "unlawful" prong of the UCL.

3. The Court DENIES Defendant's motion to dismiss Plaintiffs' UCL claim to the extent Plaintiffs' UCL claim relies on the "unfair" prong of the UCL.

**IT IS SO ORDERED.**

Dated: September 29, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge